# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| UNITED STATES OF AMERICA, | Case No.: 2:13-cr-00221-APG |
|---|---|
| Plaintiff | **ORDER DENYING IN PART MOTION TO VACATE AND SETTING HEARING** |
| v. | [ECF No. 258] |
| ANTHONY JORDAN, | |
| Defendant | |

Defendant Anthony Jordan was convicted of seven counts of aiding and abetting bank robbery in violation of 18 U.S.C. § 2113(a) and § 2, three counts of aiding and abetting the use (or brandishing) of a firearm in a crime of violence in violation of 18 U.S.C. § 924(c) and § 2, and three counts of interference with commerce by robbery (Hobbs Act robbery) in violation of 18 U.S.C. § 1951(a). He now moves to vacate, set aside, or correct his sentence under 28 U.S.C. §2255. ECF No. 258. He argues that he received ineffective assistance of counsel and that the prosecutor abused its discretion by charging him with three counts of violating § 924(c). The United States opposes the motion. ECF No. 264.

I dismiss Jordan's claim that the prosecutor abused its discretion, as he has defaulted on that claim and is otherwise barred from relitigating the claim. I will conduct a hearing on Jordan's claim that his counsel was ineffective by incorrectly advising him regarding the elements of aiding and abetting a § 924(c) offense. But I dismiss his remaining claims that his counsel was ineffective as those claims are without merit and rebutted by the record.

/ / / /

/ / / /

/ / / /

**Background**

Jordan and two others robbed seven banks and three retail stores in late 2012 through early 2013. Marquee Munerlyn, typically carrying a gun, would rob the establishments.[1] Jordan acted as the lookout. After Munerlyn was arrested, he acknowledged his participation in the crimes, implicated Jordan, and pleaded guilty. He also agreed to assist the government, including testifying at Jordan's trial.

Jordan elected to go to trial. As relevant to his motion, the following events occurred during his trial. After the jury was selected, but before opening arguments, Juror Four indicated to the court that he had an issue regarding his ability to serve. The juror was canvassed outside the presence of the other jurors and counsel had an opportunity to conduct additional voir dire. In response to my and defense counsel's questions,[2] the juror indicated his issues and stated he could not be fair and impartial. He further indicated that he had not discussed his issues with the other jurors. I excused the juror for cause.

On the second day of trial, Juror Thirteen indicated that the trial testimony had refreshed her memory regarding a question asked during voir dire.[3] She was canvassed outside the presence of the other jurors and counsel had an opportunity to also ask questions. Juror Thirteen stated that her son had been a victim of bank robbery 14 years prior to the trial. She stated she had not shared this with the other jurors and stated that it would not affect her ability to be fair

---

[1] Munerlyn self-identified his role in the crimes as "the gunman, you know, the main one that committed all the robberies."

[2] The prosecutor elected to not ask any questions.

[3] Juror Thirteen had disclosed, during voir dire, that her sons had previously worked for a bank.

2

and impartial. Based on the statements the juror provided, I determined that she should not be removed for cause.

Following the government's case-in-chief, I questioned Jordan about his right to testify. I asked him, "have you had sufficient time to consult with your attorney about your decision whether to testify or not?" He responded that he would "like a little more time." I inquired as to how much time he needed. Defense counsel suggested 10 minutes would be sufficient. Ultimately, the proceedings were recessed for 30 minutes to allow Jordan to talk with his counsel. Immediately following the recess, I asked Jordan whether he had sufficient time to talk to his attorney. Jordan stated he had. I continued questioning Jordan, asking him whether "your attorney fully informed you about the consequences of your decision to testify or to not testify?" He responded, "Yes." I asked whether counsel had answered all questions Jordan had asked. He responded, "Yes." I finished by asking Jordan whether he had any further questions he wanted to discuss with his counsel before indicating his decision whether to testify or not. He responded, "No." Following this, Jordan stated he would not testify.

During closing arguments, while arguing whether the government had met its burden of proof regarding the § 924(c) offenses, Jordan's lawyer stated: "[H]e can't be convicted [of aiding and abetting a § 924(c) offense] unless he performed an act to facilitate or encourage the use of the gun, not the robbery itself, the use of the gun."

**Analysis**

Jordan contends that the government abused its discretion by charging him with three counts of aiding and abetting a § 924(c) offense. He also contends that his counsel provided ineffective assistance:

    a)     by failing to advise him to accept a plea agreement;

3

| | | |
|---|---|---|
| | b) | for incorrectly advising him regarding the elements of aiding and abetting a § 924(c) offense (which advice was consistent with the above-noted statement made in closing arguments); |
| | c) | for failing to support his decision to testify at trial; |
| | d) | for insufficiently attempting to rehabilitate Juror Four or, alternatively for failing to establish that Juror Four had tainted the jury; |
| | e) | for insufficiently arguing that Juror Thirteen be excused for cause. |

**Prosecutorial Abuse of Discretion**

Jordan concedes that the decision of what charge to file generally rests entirely in the prosecutor's discretion. But, he argues, "this one seems to have gone too far." In opposition, the United States argues that Jordan has procedurally defaulted on the claim. Jordan responds both that he did not default (because he litigated the claim in his direct appeal) and that he can show cause for his default. As neither of Jordan's arguments is meritorious, I cannot reach the merits of his claim.

Jordan's argument, that he "in essence *did* directly appeal the prosecutor's charging decision" (emphasis original), amounts to a concession requiring me to dismiss this claim. "When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000) (citation omitted); *see also Olney v. United States*, 433 F.2d 161, 162 (9th Cir. 1970) ("Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255."). Given Jordan's concession that "[a]ll [he] is doing now is re-stating the same" argument, and given that the Ninth Circuit rejected that argument, he cannot re-litigate the claim in the present motion.

Further, if Jordan did not litigate this claim in his direct appeal, he has procedurally defaulted the claim. A defendant procedurally defaults on a claim that he could have raised in his direct appeal but did not. *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.").

Jordan contends that he "he can claim 'novelty' for his failure to raise the overcharging of his indictment on direct appeal." A defendant has cause to excuse a default where "a constitutional claim is so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984); *see also, United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007) (identifying "novelty" as a claim that "rests upon a new legal or factual basis that was unavailable at the time of direct appeal"). Jordan has not identified any new legal or factual basis unavailable to him at the time of his direct appeal.[4] Thus, he has not shown cause to excuse his procedural default. Accordingly, I must dismiss this claim as defaulted.

**Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel under 28 U.S.C. § 2255, Jordan must demonstrate: (1) that counsel's representation fell below an objective standard of reasonableness (the "deficiency" prong); and (2) that counsel's deficient performance prejudiced him (the "prejudice" prong). *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The movant must make a compelling evidentiary showing in order to satisfy the deficiency prong:

---

[4] Jordan argues his present claim is novel by referencing questions asked by one of the appellate judges during oral argument. He has not shown, however, why questions of an appellate judge constitute a new legal basis supporting a claim of prosecutorial misconduct. Neither do such questions amount to facts supporting a claim that the prosecutor abused its discretion in charging Jordan.

5

> To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.

*Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (internal citations and quotations omitted). I review an ineffectiveness claim against the backdrop of the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Stokley v. Ryan*, 659 F.3d 802, 811-12 (9th Cir. 2011). There is no constitutional deficiency where counsel fails "to raise a meritless legal argument," *Shah v. United States*, 87 F.3d 1156, 1162 (9th Cir. 1989), or where a "movant's allegations, viewed against the record," are "palpably incredible or patently frivolous." *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989). "Deficiency," therefore, requires the movant "to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington*, 131 S. Ct. at 787.

The prejudice prong is just as strict. The movant must demonstrate a "reasonable probability that, but for counsel's deficiency, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 ("reasonable probability" is "sufficient to undermine confidence in the outcome"); *see also Wong v. Belmontes*, 130 S. Ct. 383, 390–391 (2009) (burden on claimant) (quoting *Strickland*, 466 U.S. at 694); *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994) (in addition to defective performance, movant "must also meet the substantial burden" of establishing prejudice). The movant thus does not prove prejudice by (1) listing the things he thinks his attorney "should have done," and then (2) speculating that, had he done them, there might have been a different outcome. Rather, the movant must state the

specific facts that—but for counsel's deficient performance—would have likely produced a more favorable result. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") (citation omitted); *see also Gonzalez v. Knowles*, 515 F.3d 1006, 1015-16 (9th Cir. 2008) ("Gonzalez does not contend that he actually suffered from a mental illness; he merely argues that *if* tests had been done, and *if* they had shown evidence of some brain damage or trauma, it *might have* resulted in a lower sentence. Such speculation is plainly insufficient to establish prejudice.") (emphases in original) (citation omitted).

Jordan has failed to establish that his counsel provided ineffective assistance regarding Jordan's decision to not testify. He asserts that he wanted to testify, but that his counsel "did not verify with his client that he wanted to testify in his own behalf during colloquy with the court about whether or not Jordan would take the stand in his own behalf." I note, initially, that Jordan cannot obtain relief on the basis that he was denied his right to testify.

> In [*United States v. Edwards*, 897 F.2d 445 (9th Cir.), cert. denied, 498 U.S. 1000, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990),] the defendant wanted to testify, but the lawyer misunderstood him and did not call him as a witness. *Id.* at 446. We held the court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred. *Id.* When a defendant is silent in the face of his attorney's decision not to call him as a witness, he has waived his right to testify. *Id.* at 447.

*United States v. Nohara*, 3 F.3d 1239, 1243-44 (9th Cir. 1993).

Jordan did not waive his right to testify by merely remaining "silent in the face of his attorney's decision not to call him as a witness." Rather, he expressly waived his right to testify following my questioning to ensure the waiver was knowing and voluntary. Jordan indicated that he wanted more time to discuss the decision with his attorney. While counsel suggested 10 minutes would be sufficient, the proceedings were recessed for 30 minutes to allow them to

7

discuss the issue. Following that recess, Jordan affirmed that he had sufficient time to confer with his attorney.

Jordan now argues that his express waiver of his right to testify was neither knowing nor voluntary because "he could not feel comfortable testifying." He attributes this discomfort to his counsel's ineffective assistance in preparing him to testify. The right to effective counsel, however, permits counsel to make strategic defense decisions, including evaluating whether or not a defendant should testify. *See Burger v. Kemp*, 483 U.S. 776, 792 (1987). An attorney's assistance is not ineffective merely because the defendant disagrees with his attorney's assessment that the defendant would harm, rather than help, his defense by testifying.

Jordan's argument amounts to a post-hoc, speculative disagreement regarding a strategic decision whether his testimony would help or hurt his defense. He asserts that "his testimony could be the only way that he could negate the element of knowing in advance that Munerlyn would carry a firearm in the specific robberies in which they were charged." As his defense counsel states, however, he "counseled [Jordan] if he testified truthfully, he would convict himself." Jordan has not met his burden of showing that his counsel's advice that Jordan would convict himself if he testified objectively fell outside the wide range of reasonable professional assistance.

Jordan has also failed to show his counsel was ineffective regarding Juror Four, whom I excused for cause. The record establishes (and Jordan does not argue otherwise) that Juror Four stated he could not be a fair and impartial juror.[5] Jordan argues his counsel was ineffective for a

---

[5] Juror Four: I'm reading a book for my criminal justice class, it's called "The New Jim Crow." It's talking about, like, sending young black men to jail and I think I would have a conflict with that. I don't think I can be completely unbiased in that situation.

8

wide, and sometimes conflicting, range of reasons. He contends counsel was ineffective for failing to rehabilitate Juror Four. Jordan fails to offers any suggestion, argument, or evidence showing how effective counsel would or could have rehabilitated a juror who, as Jordan concedes, "expressed a strong and previously unmentioned bias." Jordan argues his counsel was ineffective for failing to verify that Juror Four had not affected other jurors. He ignores, however, that I engaged in a colloquy[6] with Juror Four establishing that he had not discussed his

---

Court: And why is that? What is it about the book? I'm not familiar with the book, I mean, I know the concept, but . . . .

Juror Four: It's just talking about how, like, the criminal justice system targets black African-American males and I wouldn't be completely unbiased. And plus, like, my dad, he went through a lot of police harassment, so, that's another thing where I wouldn't be completely unbiased.

Court: Okay. You think it would affect your ability to be a fair and impartial juror on this case?

Juror Four: To be honest, yes, sir.

[6] I engaged in the following exchange with Juror Four:

Court: Have you shared any of these opinions or issues with any of the other jurors in the jury room?

Juror Four: No, sir.

Court: You haven't said anything to any of them about your scheduling issues?

Juror Four: No, sir.

Court: Haven't said anything to any of them about the book you're reading or what it's about?

Juror Four: No, sir . . . .

issues with the other jurors.[7]  Jordan asserts his own belief that Juror Four was pressured or coerced into his effort to get off the jury, and he faults his counsel for not inquiring into this issue.  Jordan's belief, however, rests on nothing more than an extended series of speculative inferences unsupported by the record.  His argument amounts to nothing more than mere conjecture.

      Jordan has also failed to show his counsel was ineffective regarding Juror Thirteen.  On the second day of trial, Juror Thirteen recalled that one of her sons had been robbed while working at a bank.  She indicated this event occurred about 14 years prior to this trial.  She also recalled that her other son, while working as a bank teller, had caught a "washed check" about 10 years prior to the trial.[8]  She stated that she had not shared these recollections with the other jurors and the recalled memories would not affect her ability to serve as a fair and impartial juror.  I determined there were no grounds to remove her for cause and I provided counsel an opportunity to make a record.  Defense counsel indicated that his client objected, and restated, "just to be clear," that he objected to Juror Thirteen's presence "on behalf of [his] client."

---

[7]    Jordan speculates that, although Juror Four had indicated a bias favoring him, any expression of that bias to other jurors would have caused the other jurors to be biased against him.

[8]    Contrary to Jordan's assertion, Juror Thirteen had disclosed that her sons worked at a bank.

    Court:  Have you, or a member of your family, or a close friend, ever worked in a bank or a financial institution?
    . . .
    Juror Thirteen:  My two sons worked in a bank putting themselves through college, for Bank of America.

Jordan's argument that his counsel was ineffective rests upon his conclusion that I should have dismissed Juror Thirteen for cause. He suggests that further questioning by his attorney, and a more strongly worded objection, would have achieved that result. But there was no basis to dismiss Juror Thirteen for cause. She unequivocally stated that her recalled memories would not affect her ability to be fair and impartial, and that she could set them aside. This record precludes finding either that counsel was ineffective or that Jordan was prejudiced by counsel's assistance rendered regarding Juror Thirteen.

Jordan asserts his counsel was ineffective for failing to advise him to take a plea deal. The assertion is contrary to the record, as supplemented by defense counsel's answers to interrogatories of the government. Defense counsel states that he conveyed to Jordan all plea offers made by the government. He further states that he advised Jordan "that it would be foolish to proceed to trial based on what was shown in the discovery. There was damning surveillance footage and the gunman pled guilty and had agreed to testify against Mr. Jordan." Accordingly, this ground for relief is without merit.

A closer question exists on Jordan's remaining argument that his counsel was ineffective for misadvising him about the elements of a § 924(c) offense. To convict a defendant of aiding and abetting a § 924(c) offense, the government must show either (a) the defendant facilitated the underlying violent felony and knew a firearm would be used, or (b) the defendant facilitated the use of the firearm.

Jordan contends his counsel did not advise him that he could be convicted under either theory, but instead incorrectly advised him that the government could convict him only on the theory that he "facilitated the use and carry of the firearm itself." He argues that he knew the government could not meet this burden because, as shown by the evidence at trial, he did not

facilitate the use or carrying of the firearm. Accordingly, he argues his counsel's incorrect advice caused him to not accept a plea offer made by the government and conveyed to Jordan by his counsel.

In support of his argument, Jordan points to a statement made by counsel during closing argument: "And, he can't be convicted unless he performed an act to facilitate or encourage the use of the gun, not the robbery itself, the use of the gun." Jordan argues this statement suggests counsel "may have labored under the misapprehension of the applicable law that Jordan claims his counsel foisted upon him."

If counsel's statement is read literally and without any context, it is an incomplete summary of the alternative elements by which the government can obtain a conviction for aiding and abetting a §924(c) offense. But the statement was made during defense counsel's closing argument. That is, he did not make the statement to demonstrate his knowledge regarding the government's burden of proof, or to convey to Jordan the elements of aiding and abetting a § 924(c) offense. Rather, counsel uttered that single sentence in an extended argument attempting to convince a jury to acquit Jordan under any theory presented by the government. Prior to that statement, counsel indicated the defense theory regarding the § 924(c) charges: "mere presence is a defense to just about every crime. Just because you're there and a crime is taking place doesn't mean you're guilty." Further, immediately following counsel's statement upon which Jordan relies, defense counsel argued:

> He must aid and abet the underlying crime and knowing that a gun would be used or carried. Let me back it off. Merely aiding the underlying crime and knowing that a gun would be used cannot support a conviction. He must have directly facilitated or encouraged and not simply be aware.

12

In sum, the full context of counsel's closing argument suggests that he correctly understood the government's burden and the elements of the offense of aiding and abetting a § 924(c) violation.

But this does not resolve the question whether counsel effectively conveyed that knowledge to Jordan. Nor does the government's effort to supplement the record with a statement from defense counsel resolve it. Rather than offering specifics, defense counsel summarily and generally states that he "fully and comprehensively advised Jordan about the elements of the crimes of which he was charged." When viewed against the record, I cannot conclude that Jordan's assertion that counsel misadvised him regarding the elements of aiding and abetting a § 924(c) offense are palpably incredible or patently frivolous. Therefore, I will hold an evidentiary hearing limited to Jordan's ground for relief that his counsel did not correctly advise him regarding the elements of aiding and abetting a §924(c) offense, resulting in his decision to not accept a plea offer made by the government.

I THEREFORE ORDER that all grounds for relief in defendant Anthony Jordan's 28 U.S.C. § 2255 motion **(ECF No. 258)**—except as to his claim that his counsel was ineffective for misadvising him of the elements of aiding and abetting an 18 U.S.C. §924(c) offense—are **DENIED.**

I FURTHER ORDER that I will hold an evidentiary hearing solely on Jordan's claim that his counsel was ineffective for misadvising him of the elements of aiding and abetting an 18 U.S.C. § 924(c) offense. Due to the national emergency regarding the Covid-19 virus, the court is temporarily not scheduling hearings absent an emergency. Given that Jordan's remaining claim will not impact his sentence for his other crimes, there is no emergency justifying an immediate hearing. I will schedule the evidentiary hearing after the court resumes normal operations. In the meantime, counsel should confer about how much time is needed to transport

Mr. Jordan to Las Vegas for the hearing, how many witnesses will be called at the hearing, how long the hearing will last, and how much time defense counsel needs with Mr. Jordan in person to prepare for the hearing. By April 10, 2020, the parties shall file a joint Notice specifying this information (and their disagreements, if any). I will use that information when scheduling the evidentiary hearing.

DATED this 17th day of March, , 2020.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE