UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| UNITED STATES OF AMERICA, | Case No.: 2:13-cr-00221-APG-CWH |
|---|---|
| Plaintiff | **Order Granting Motion for Compassionate Release** |
| v. | |
| ANTHONY JORDAN, | [ECF No. 320] |
| Defendant | |

I sentenced defendant Anthony Jordan to over 60 years in prison for being the lookout in a string of armed robberies. The bulk (55 years) of his lengthy sentence is due to the mandatory minimum sentence for three gun charges under 18 U.S.C. § 924(c), even though he was not convicted of using a weapon himself.

After serving eight years in prison, Mr. Jordan now moves for compassionate release under 18 U.S.C. § 3582(c). ECF No. 320. The Government opposes. Because Mr. Jordan has demonstrated extraordinary and compelling reasons for compassionate release, I grant his motion.

I.  **BACKGROUND AND PROCEDURAL POSTURE**

Mr. Jordan and his co-defendant Sesley Williams were convicted of multiple crimes related to a string of armed robberies of stores and banks. ECF No. 174. Marquee Munnerlyn went into the establishments to commit the robberies, Ms. Williams drove the getaway car, and Mr. Jordan served as the lookout. Mr. Jordan committed one of the bank robberies himself, but he was not charged with a gun crime for that event. ECF No. 29 at 7. Three of Mr. Jordan's counts of conviction were gun charges under 18 U.S.C. § 924(c) because Mr. Munnerlyn brandished a gun during some of the robberies. In March 2015, I sentenced Mr. Jordan to 70

months for the robbery charges and 660 months, consecutive, for the gun counts under 18 U.S.C. § 924(c). *Id.*  The sentence was so long because of the mandatory length and consecutive nature of sentencing under § 924(c).

Subsequent to Mr. Jordan's conviction, Congress passed and the President signed the First Step Act of 2018.[1]  That statute allows inmates to move for compassionate release after petitioning their warden.[2]  Important here, the First Step Act also eliminates the 25-year mandatory minimum sentence under § 924(c) unless the defendant has a prior § 924(c) conviction from a separate case.  Had Mr. Jordan been sentenced under this new version of § 924(c), his mandatory minimum sentence for the gun crimes would have been 17 years instead of the 55 he received for those crimes.

Mr. Jordan moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 320.  He contends that reduction of the § 924(c) mandatory minimum sentence under the First Step Act, combined with his personal history and characteristics, justify his immediate release.

II.   **ANALYSIS**

A.   **I have jurisdiction to consider Mr. Jordan's motion.**

The Government first argues that I lack jurisdiction to consider Mr. Jordan's motion because he has a pending appeal at the Ninth Circuit of my denial of his motion under 18 U.S.C. § 2255. ECF No. 322 at 1, 4.  I disagree.

---

[1] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

[2] The Government agrees Mr. Jordan has satisfied this administrative prerequisite to filing his motion. ECF No. 322 at 2.

2

"The filing of a notice of appeal . . . divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam). This "notion that a pending appeal strips the trial court of jurisdiction is a judicially-crafted rule designed to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *See United States v. Hickey*, 580 F.3d 922, 927 (9th Cir. 2009) (internal quotations and citation omitted). Thus, divestment of jurisdiction "does not apply to collateral matters not affecting the questions presented on appeal." *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 773 (11th Cir. 1999).

Mr. Jordan's appeal does not present the question of compassionate release. Thus, the same issue is not before two courts and there will be no confusion or waste of time from my addressing his motion for compassionate release. The appeal does not divest me of jurisdiction over his motion.

### B. Compassionate release is justified.

The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i) allows me to modify a sentence if "extraordinary and compelling reasons warrant" it. I must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

#### 1. The Sentencing Commission's policy statements do not preclude compassionate release.

The Government contends that the Sentencing Commission's policy statements—particularly U.S.S.G. § 1B1.13 and Application Note 1—do not include as a reason to grant compassionate release a "reevaluation of the severity of an original sentence." ECF No. 322 at 8.

Thus, according to the Government, because those "policy statements are binding on courts," I cannot grant compassionate release based on the reduction of the § 924(c) mandatory minimum sentence. *Id*.

The Ninth Circuit recently rejected that argument, holding "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (alteration in original). That guideline section "may inform" my discretion, but it is not binding on me. *Id*. Thus, the Sentencing Commission's policy statements do not preclude compassionate release here.

### 2. There are extraordinary and compelling reasons to grant compassionate release.

Although the First Step Act eliminated § 924(c)'s mandatory 25-year minimum sentence in cases like this, Congress did not make that change retroactive. The Government therefore argues that reducing Mr. Jordan's sentence would improperly give retroactive effect where Congress expressly declined to. ECF No. 322 at 6, 10. But numerous courts have held that this lack of retroactivity does not bar judges from making an individualized assessment of a defendant's eligibility for compassionate release. "The fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i)." *United States v. McCoy*, 981 F.3d 271, 286-87 (4th Cir. 2020). The Fourth Circuit recognized that not all § 924(c) defendants are entitled to be resentenced, but courts have the authority to "relieve some defendants of those sentences on a case-by-case basis." *Id*. at 287 (internal quotations and citation omitted).

"Many district courts across the country have . . . concluded that a defendant's excessive sentence because of mandatory-minimum sentences since mitigated by the First Step Act may, alongside other factors, justify compassionate release." *United States v. Owens*, 996 F.3d 755, 762 (6th Cir. 2021) (collecting cases); *see also United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021) (holding that a pre-First Step Act mandatory sentence "cannot, standing alone, serve as the basis for a sentence reduction . . . [but] the combination of such a sentence and a defendant's unique circumstances that constitute extraordinary and compelling reasons" can) (internal quotations and citations omitted). Although the Ninth Circuit has not yet directly addressed this issue, it has cited with approval *McCoy*, *McGee*, *Owens*, and other "sister circuits" that have held similarly. *Aruda*, 993 F.3d at 801. Many of those courts include in their analysis the defendant's health and age, rehabilitation efforts, and the disparity between the actual sentence and the sentence the defendant would have received if sentenced today. *Owens*, 996 F.3d at 762-763 (collecting cases).

Mr. Jordan was barely 25 years old when he committed these crimes. He was naïve, impressionable, and drawn into this scheme by Mr. Munnerlyn and Ms. Williams. The Presentence Investigation Report shows he had zero criminal history points before committing these crimes. Mr. Jordan has been in custody for over eight years. While in prison, he has taken classes and tried to educate himself despite COVID-19 lockdowns and restrictions, and he has worked as a prison orderly.[3] ECF No. 320-3. He appears to be a much different person than when he committed these crimes. Considering these factors, his rehabilitation efforts, and the extreme length of his 55-year sentence compared to the sentence called for under § 924(c) today,

---

[3] He contracted COVID-19 while working as an orderly but remained asymptomatic.

there are extraordinary and compelling reasons to grant Mr. Jordan a compassionate modification of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). *See Bellamy v. United States*, 474 F. Supp. 3d 777, 786 (E.D. Va. 2020) (the defendant's "relative youth [21 years old] at the time of the sentence, the overall length of the sentence, the disparity between his sentence and those sentenced for similar crimes after the FIRST STEP Act, and his rehabilitative efforts form an extraordinary and compelling basis for relief"); *see also United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) (district court's "finding of extraordinary and compelling reasons was based on . . . a combination of factors . . . including: Maumau's young age at the time of sentencing; the incredible length of his stacked mandatory sentences under § 924(c); the First Step Act's elimination of sentence-stacking under § 924(c); and the fact that Maumau, if sentenced today, . . . would not be subject to such a long term of imprisonment.") (quotation marks omitted).

### 3. **The applicable factors under 18 U.S.C. § 3553(a) warrant a reduction of Mr. Jordan's sentence.**

When deciding how to modify Mr. Jordan's sentence, I must consider the factors in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Also, the sentence I impose must reflect the seriousness of the crime, promote respect for the law, provide just punishment, deter future crimes, protect the public, provide needed education or training, and avoid sentencing disparities. *Id.* Those factors favor a significant reduction of Mr. Jordan's sentence.

Mr. Jordan was the lookout in all but one of the robberies. He committed one bank robbery himself, but he was not charged with a gun crime for that event. ECF No. 29 at 7.

Fortunately, no one was injured during any of the robberies. One of the Ninth Circuit judges addressing Mr. Jordan's direct appeal referred to his crimes as "small potato stuff" in comparison to the length of his sentence. ECF No. 258 at 26-27. While these are serious felonies warranting punishment, a virtual life sentence is not justified.

With regard to these robberies, Mr. Munnerlyn admitted to being the triggerman in approximately 20 of them. He told the FBI that Mr. Jordan was the lookout. He pleaded guilty to only three robberies under a plea agreement that called for 17 years in prison. *See* Plea Agreement, Case No. 2:13-cr-00328-HDM-GWF, ECF No. 32. Notably, he was not charged with any gun crimes under § 924(c) even though he admitted to using a gun during many of the robberies.

Before he was sentenced, Mr. Munnerlyn recanted part of his story, claimed he had lied to the FBI, and stated that Mr. Jordan had no knowledge of or role in the robberies. *See* Transcript of Sentencing, Case No. 2:13-cr-00328-HDM-GWF, ECF No. 74 at 3-8. Because of that, the Government asked the sentencing judge to deny Mr. Munnerlyn a sentence reduction for acceptance of responsibility and instead impose a longer term. *Id.* Mr. Munnerlyn was sentenced to 20 years in prison. *See* Judgment, Case No. 2:13-cr-00328-HDM-GWF, ECF No. 58. He later retracted his earlier retraction and testified at Mr. Jordan's trial that Mr. Jordan was the lookout. He admitted to several other lies, including while testifying at Mr. Jordan's trial.

One of the factors I must consider is sentencing disparity. 18 U.S.C. § 3553(a)(6). I may consider the sentence Mr. Jordan and other similarly situated defendants would receive for these crimes today. The First Step Act eliminated the 25-year mandatory minimum for cases like this, so Mr. Jordan would face a statutory minimum of 17 years, rather than the 55 years he received. Even more on point, the treatment Mr. Munnerlyn received from the Government and the

sentence imposed on him are illuminating when compared to Mr. Jordan's sentence. Mr. Munnerlyn was the admitted triggerman in approximately 20 robberies, pointing the gun at bank tellers and other victims. Nevertheless, the Government did not require him to plead guilty to even one § 924(c) gun crime, and it recommended a 17-year sentence (before he recanted his story). The disparity of treatment between Mr. Munnerlyn and Mr. Jordan, especially considering their respective roles, is stark and strongly favors a significantly reduced sentence for Mr. Jordan.

It appears doubtful that a lengthy sentence like this has much of a deterrent effect on the public. According to the Justice Department, "[r]esearch shows clearly that the chance of being caught is a vastly more effective deterrent than even draconian punishment." National Institute of Justice, *Five Things About Deterrence* (May 2016); *see also* Valerie Wright, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, The Sentencing Project, at 1 (Nov. 2010) ("Research to date generally indicates that increases in the certainty of punishment, as opposed to the severity of punishment, are more likely to produce deterrent benefits."). *But see Length of Incarceration and Recidivism*, United States Sentencing Commission, at 4 (April 2020) ("offenders incarcerated for more than 120 months were less likely to recidivate eight years after release").

On the other hand, a sentence of over 60 years in a case like this undercuts, rather than promotes, respect for the law. Mr. Jordan's sentence is two-and-a-half times longer than the average sentence for murder and decades longer than the average sentences for kidnapping, manslaughter, and other serious crimes. *McCoy*, 981 F.3d at 285. A life sentence signifies that a defendant is entirely beyond rehabilitation, can contribute nothing to society, and is worthy only

of warehousing. That is not the case for Mr. Jordan, so that outcome in this case engenders derision for the criminal justice system.

Mr. Jordan had no significant criminal history before committing these crimes. Despite being incarcerated in a maximum-security facility, he has made efforts to rehabilitate himself through classes and self-help books and he has worked as a prison orderly. He has a sister that will provide him housing and help him find a job. ECF No. 320-4.

Mr. Jordan has served over eight years in custody. Given the sentence imposed on Mr. Munnerlyn, Mr. Jordan's personal history and characteristics, and the other factors discussed above, that is sufficient but not greater than necessary to serve the interests of justice and comply with the purposes of sentencing. Under 18 U.S.C. § 3582(c)(1)(A)(i), I will reduce Mr. Jordan's custodial sentence to time served.

### III. CONCLUSION

I THEREFORE ORDER that defendant Anthony Jordan' motion for compassionate release **(ECF No. 320) is granted.** His previously imposed sentence of imprisonment of 730 months is reduced to time served.

I FURTHER ORDER that this order is stayed for up to 14 days for the verification of Mr. Jordan's residence and establishment of a release plan, to make appropriate travel arrangements, to quarantine him to prevent the spread of COVID-19, and to ensure his safe release. Mr. Jordan shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for him to travel. There is to be no delay in ensuring travel arrangements are made. If more than 14 days are needed to make appropriate travel arrangements and ensure his safe release, the parties shall immediately notify me and show cause why the stay should be extended.

I FURTHER ORDER Mr. Jordan to provide to the Probation Office in the district where he will be released the complete address where he will reside upon release because it was not included in his motion.

I FURTHER ORDER that Mr. Jordan's previously imposed conditions of supervised release are unchanged.

DATED this 13th day of August, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE